## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CORDEZ TANNYHILL, individually and on behalf of all others similarly situated, | : : : : |
| Plaintiff, | : : |
| v. | : : |
| LM MANUFACTURING, LLC, a Michigan limited liability company, | : : : : |
| Defendant. | : : |

Case No: 2:24-cv-11800-SJM-EAS

Hon. Stephen J. Murphy III

Magistrate Judge Elizabeth A. Stafford

## <u>UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT</u>

Plaintiff, Cordez Tannyhill, jointly by and through his attorneys and without opposition from Defendant, LM Manufacturing, LLC ("Defendant"), respectfully move this Court for entry of proposed Order Approving FLSA Settlement, attached hereto as Exhibit A, which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses this action with prejudice and without further costs or fees to any party.  In support of this Unopposed Motion, Plaintiff states as follows:

1.      On July 11, 2024, Plaintiff filed his Complaint, initiating this action on behalf of himself and all other persons similarly situated, seeking damages for

1

alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (hereinafter referred to as "Plaintiffs' Lawsuit"). [ECF No. 1].

2.      Defendant filed its Answer on September 24, 2024, pursuant to which it denied the allegation in Plaintiff's Complaint and asserted thirty-four (34) affirmative defenses. [ECF No. 10].

3.      On October 14, 2024, the Parties submitted their Rule 26(f) Joint Discovery Plan. [ECF No. 15].

4.      In preparation to submit the Joint Discovery Plan, the Parties held a meet and confer to discuss this case and possible steps towards resolution.   In particular, the Parties discussed the informal exchange of relevant data and the possibility of early settlement without the need for further litigation.

5.       Throughout the balance of 2024 and the beginning of 2025, the Parties held multiple meet and confer conferences during which they discussed, among other things: the geographic scope of Plaintiff's claims; the viability of Plaintiff's claims including application of those claims to various forms of shift differentials paid by Defendant to employees at its Detroit, Michigan facility (where Plaintiff worked); the voluntary exchange of pay and timekeeping data to analyze the potential damages; and the possibility of exploring resolution via direct negotiations or with the assistance of a mediator.

6.     Ultimately, the Parties asked the Court to stay the case in order to continue their discussions of an exchange of information and data and potential for early resolution.   Prior to engaging a mediator, the Parties engaged in direct negotiations.   The Parties were able to reach a resolution directly, and without mediation, on May 7, 2025.   Over the next few weeks, the Parties negotiated and finalized the long-form settlement agreement, which is now before the Court for approval. **(**Exhibit B; hereinafter the "Settlement Agreement").

7.     Plaintiff now seeks this Court's approval of the Parties' Settlement Agreement and dismissal of the case with prejudice.

8.     The Parties agree that the negotiated voluntary compromise is appropriate because the Parties recognize the costs and their respective risks associated with proceeding with lengthy, expensive, and contentious litigation.

9.     The detailed and material terms of the Settlement Agreement are discussed in the attached Brief in Support of the Unopposed Motion to Approve FLSA Settlement.

10.     In sum, the Settlement Agreement provides that Defendant shall pay a Gross Settlement Amount of $39,500, inclusive of: (i) the issuance of monetary payments (Individual Settlement Payments) to putative collective members (Eligible Employees), (ii) a Service Award to the named Plaintiff, Cordez Tannyhill, (iii) payment for Attorneys' Fees and Litigation Expenses (as approved by this Court and

including those in connection with securing Court approval of the Settlement Agreement), and (iv) fees associated with settlement administration.

11.     The Parties agree that the Settlement Agreement is a fair and reasonable resolution and compromise of a *bona fide* dispute over issues arising under Plaintiff's FLSA claim.

12.     Thus, Plaintiff respectfully asks this Court to approve the Parties Settlement Agreement in its entirety and to dismiss this case with prejudice and without any costs or fees to any party, except as provided in the Settlement Agreement.

WHEREFORE, Plaintiff moves this Court for entry of the proposed Order Approving Settlement Agreement, attached hereto as Exhibit A, which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses this action with prejudice and without further costs or fees to any party.

Date: July 8, 2025                                Respectfully submitted,

Jason J. Thompson (P47184)
Kathryn E. Milz (IL ARDC 6297213)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

CORDEZ TANNYHILL,
individually and on behalf of all
others similarly situated,

              Plaintiff,

v.

LM MANUFACTURING, LLC, a
Michigan limited liability
company,

              Defendant.

Case No: 2:24-cv-11800-SJM-EAS

Hon. Stephen J. Murphy III

Magistrate Judge Elizabeth A. Stafford

## BRIEF IN SUPPORT OF UNOPPOSED MOTION
## FOR APPROVAL OF FLSA SETTLEMENT

# **TABLE OF CONTENTS**

**FACTUAL BACKGROUND**

I.     **Introduction** ..................................................................................1

II.    **Settlement Terms and Documents** ...........................................**2**

    A. Individual Settlement Payments ................................................ 3

    B. Service Award ........................................................................... 4

    C. Attorneys' Fees, Litigation Expenses and Settlement Administrative Fees ................................................................................ 4

    D. Release of Claims ....................................................................... 4

    E. Notice of Settlement of Lawsuit ................................................. 5

**LAW AND ARGUMENT**

I.     **The Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute** ........................................................................... **6**

    A. No Indicia of Fraud or Collusion Exists ................................... 7

    B. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval .......................................................... 7

    C. Investigation Was Sufficient to Allow the Parties to Act Intelligently ...... 8

    D. The Risks of Litigation Favor Approval .................................... 9

    E. Counsel and Named Plaintiff Favor the Agreement .................. 10

    F. Absent Class Members' Reaction ............................................. 10

    G. Settlement is in the Public Interest .......................................... 11

II.    **The Settlement Distributions are Fair, Reasonable, and Adequate** .**11**

    A. Plaintiff's Counsel's Request for Fees and Litigation Expenses is Reasonable and Appropriate in this Case ........................... 12

       1. The Court Should Adopt the Percentage Approach ................ 12

       2. The *Ramey* Factors ............................................................. 14

    B. The Service Award to the Named Plaintiff is Fair and Reasonable ........ 18

    C. The Settlement Notice is Adequate .......................................... 21

**CONCLUSION** .............................................................................22

i

## TABLE OF AUTHORITIES

*Arledge v. Domino's Pizza, Inc.*
  2018 WL 5023950 (S.D. Ohio Oct. 17, 2018).....................................................20

*Arp v. Hohla & Wyss Ents., LLP*
  2020 U.S. Dist. LEXIS 207512 (S.D. Ohio Nov. 5, 2020)...........................13, 17

*Bert v. AK Steel Corp.*
  2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)....................................................19

*Bozak v. FedEx Ground Package Sys., Inc.*
  2014 WL 3778211 (D. Conn. July 31, 2014) .....................................................20

*Brotherton v. Cleveland*
  141 F. Supp. 2d 894 (S.D. Ohio 2001) ..............................................................11

*Castillo v. Morales, Inc.*
  2015 WL 13021899 (S.D. Ohio Dec. 22, 2015)..................................................21

*Connectivity Sys. Inc. v. Nat'l City Bank*
  2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ......................................................10

*Crawford v. Lexington-Fayette Urban County Government*
  2008 WL 4724499 (E.D. Ky. Oct. 23, 2008).................................................6, 11

*Cruz v. Don Pancho Mkt., LLC*
  2016 W.L. 4531142 (W.D. Mich. Aug. 23, 2016)................................................6

*Dallas v. Alcatel-Lucent USA, Inc.*
  2013 WL 2197624 (E.D. Mich. May 20, 2013) .................................................18

*Dewald v. Time Warner Cable Inc.*
  2021 U.S. Dist. LEXIS 32459 (S.D. Ohio Feb. 16, 2021) .................................13

*Fegley v. Higgins*
  19 F.3d 1126 (6th Cir. 1994)..............................................................................12

*Frank v. Eastman Kodak Co.*
  228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................19

*Franks v. Kroger Co.*
  649 F.2d 1216 (6th Cir. 1981).............................................................................11

*Gentrup v. Renovo Servs., LLC*
  2011 WL 2532922 (S.D. Ohio June 24, 2011) ..................................................22

*Granada Invs., Inc. v. DWG Corp.*
  962 F.2d 1203 (6th Cir. 1992)...............................................................................7

*Griffin v. Flagstar Bancorp. Inc.*
  2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ................................................. 18

*Hebert v. Chesapeake Operating, Inc.*
  2019 WL 4574509 (S.D. Ohio Sept. 20, 2019) ................................................. 13

*Hoffmann-La Roche Inc. v. Sperling*
  493 U.S. 165 (1989) ........................................................................................ 21

*In re Cardinal Health Inc. Sec. Litig.*
  528 F.Supp.2d 752 (S.D. Ohio 2007) ................................................... 12, 13, 15

*In re Cardizem CD Antitrust Litig.*
  218 F.R.D. 508 (E.D. Mich. Oct. 10, 2003)...................................................... 18

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*
  248 F.R.D. 483 (E.D. Mich. 2008) .................................................................. 10

*In re Gen. Tire & Rubber Co. Sec. Litig.*
  726 F.2d 1075 (6th Cir. 1984)............................................................................ 9

*In re Packaged Ice Antitrust Litig.*
  2012 WL 5493613 ........................................................................................... 18

*IUE-CWA v. General Motors Corp.*
  238 F.R.D. 583 (E.D. Mich. 2006) .................................................................... 7

*Lowther v. AK Steel Corp.*
  2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) ................................................. 16

*Mitchell v. Indep. Home Care, Inc.*
  2019 WL 696941 (S.D. Ohio Feb. 20, 2019)..................................................... 16

*Moore v. Aerotek, Inc.*
  2017 WL 2838148 (S.D. Ohio June 30, 2017) .................................................. 15

*Mullins v. S. Ohio Pizza, Inc.*
  2019 WL 275711 (S.D. Ohio Jan. 18, 2019) .................................................... 20

*NorCal Tea Party Patriots v. Internal Revenue Serv.*
  2018 WL 3957364 (S.D. Ohio Aug. 17, 2018).................................................. 14

*Ortiz v. Fibreboard Corp.*
  527 U.S. 815 (1999)......................................................................................... 12

*Pieber v. SVS Vision, INC.*
  2022 WL 687248 (E.D. Mich. Mar. 8, 2022) ................................................... 20

*Ramey v. Cincinnati Enquirer, Inc.*
  508 F.2d 1188 (6th Cir. 1974)..................................................................... 12, 14

iii

*Sewell v. Bovis Lend Lease, Inc.*
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)...................................................... 20

*Swigart v. Fifth Third Bank*
  2014 WL 3447947 (S.D. Ohio July 11, 2014) .................................................... 13

*Thacker v. Chesapeake Appalachia, L.L.C.*
  695 F. Supp. 2d 521 (E.D. Ky. 2010) .................................................................. 10

*UAW v. Ford Motor Co.*
  2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ................................................. 10

*UAW v. General Motors Corp.*
  497 F.3d 615 (6th Cir. 2007) ................................................................................. 7

*Velez v. Majik Cleaning Serv.*
  2007 WL 7232783 (S.D.N.Y. June 25, 2007) .............................................. 18, 20

*Wade v. Werner Trucking Co.*
  2014 WL 2535226 ................................................................................................ 22

*Wise v. Popoff*
  835 F. Supp. 977 (E.D. Mich. March 25, 1993) ................................................. 13

*Zambrano v. Motorcity Burger Co.*
  2017 WL 1477111 (E.D. Mich. Apr. 25, 2017).................................................... 6

## <u>STATUTES</u>

29 U.S.C. § 201 ................................................................................. 2, 1

29 U.S.C. § 216(b) ............................................................................. 12

## FACTUAL BACKGROUND

### I.      Introduction

On July 11, 2024, Plaintiff Cordez Tannyhill filed his Complaint, initiating this action on behalf of himself and all other persons similarly situated, seeking damages for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (hereinafter referred to as "Plaintiffs' Lawsuit").  [ECF No. 1].  In general, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and the putative collective members for compensable time including overtime at the proper overtime rate when calculating their regular rate of pay in connection with various forms of non-discretionary compensation earned in weeks during which they worked overtime hours.

Defendant filed its Answer on September 24, 2024, pursuant to which it denied the allegations in Plaintiff's Complaint and asserted thirty-four (34) affirmative defenses. [ECF No. 10].

After Defendant filed its Answer and throughout the balance of 2024 and beginning of 2025, the Parties held multiple meet and confer conferences during which they discussed, among other things: the geographic scope of Plaintiff's claims; the viability of Plaintiff's claims including application of those claims to various forms of shift differentials paid by Defendant to employees at its Detroit, Michigan facility (where Plaintiff worked); the voluntary exchange of pay and

timekeeping data to analyze the potential damages; and the possibility of exploring resolution via direct negotiations or with the assistance of a mediator.

Ultimately, the Parties requested the Court stay the case for the Parties to pursue mediation.  Prior to engaging a mediator, the Parties engaged in direct negotiations.  The Parties were able to reach a resolution directly, and without mediation, on May 7, 2025.  Over the next few weeks, the Parties negotiated and finalized the long-form settlement agreement, which is now before the Court for approval. **(**Exhibit B; hereinafter the "Settlement Agreement").  At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.

Plaintiff now seeks this Court's approval of the Parties' Settlement Agreement and dismissal of the case with prejudice.

## II.   Settlement Terms and Documents

Plaintiff submits the following settlement documents for the Court's approval or entry:

Exhibit A:   (Proposed) Order Approving FLSA Settlement

Exhibit B:   Settlement Agreement (with exhibits)

Exhibit C:   Declaration of Counsel Jason J. Thompson

If approved by the Court, the Agreement will cover Plaintiff and all the Eligible Employees[1] who deposit or otherwise negotiate the Individual Settlement Payments issued to them as part of this Settlement.  (Exh. B at § A (4-9)).

The Gross Settlement Amount is $39,500, which is inclusive of payment for: (i) the issuance of monetary payments (Individual Settlement Payments) to putative collective members (Eligible Employees), (ii) a Service Award to the named Plaintiff, Cordez Tannyhill, (iii) payment for Attorneys' Fees and Litigation Expenses (as approved by this Court and including those in connection with securing Court approval of the Settlement Agreement), and (iv) fees associated with settlement administration.  (*Id.* at § B).

### A. Individual Settlement Payments

The Individual Settlement Payments will be calculated proportionally on each Eligible Employees' alleged damages during the Relevant Period. The individual Settlement Payments will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). (*Id.* at § G(2)).

---

[1] Defined as a putative collective member who worked at its LM Manufacturing, LLC – Detroit, Michigan facility between July 11, 2021 and July 8, 2025 and is entitled to an Individual Settlement Payment pursuant to the terms of the Parties' Settlement Agreement and Release. There are a total of 725 Eligible Employees.

### B. Service Award

Defendant will pay $2,500 to Plaintiff Cordez Tannyhill, in addition to his Individual Settlement Payment, for his service as the Representative Plaintiff and for executing a general release of claims. (Exh. B, § F(3)).

### C. Attorneys' Fees, Litigation Expenses and Settlement Administration Fees

Defendant will pay up to one-third (1/3) of the Gross Settlement Amount - $13,166.67 - to Plaintiff's Counsel for attorneys' fees incurred to date and attorneys' fees that Plaintiffs' Counsel anticipates incurring as part of the settlement approval process. (Exh. B, § F(4)). Additionally, Plaintiff's Counsel will seek to recover their litigation expenses incurred in connection with this matter in an amount not to exceed $500. (*Id.*). Any amount of the Attorney's Fees and Litigation Expenses not approved by the Court shall be included as part of the Net Settlement Fund. (*Id.*).

The Settlement Agreement also contemplates settlement administration fees in an amount not to exceed $7,000.  (*Id.*).

### D. Release of Claims

The negotiating of a settlement check by any Eligible Employee makes them a Participating Plaintiff and provides sufficient consideration for his or her release of claims. (Exh. B, § G(4)). Eligible Employees will have ninety (90) days after the Settlement Notice Packets are mailed in which to deposit or otherwise negotiate their settlement checks. (*Id.*). However, settlement checks not cashed or negotiated within

90 days may be reissued once if the Parties mutually agree, or if the Settlement Administrator determines that there is good cause to do so with respect to any particular settlement check(s). (*Id.*). If any Eligible Employee does not negotiate his or her settlement check within 90 days of issuance, or thirty (30) days after reissuance of the settlement check, whichever is later, the funds will be retained by Defendant. (*Id.*).

Named Plaintiff, Cordez Tannyhill, entered into a general release. (*Id.* at § H(2)). The eligible employees will be subject to a specific release of wage and hour claims arising between July 11, 2021 through July 8, 2025. (*Id.*). Each Individual Settlement Payment issued to Eligible Employees will contain the following release language on the back of the check.

> I knowingly and voluntarily release, waive, and discharge LM Manufacturing, LLC. and all other Released Parties, from any and all federal, state, and local wage-and-hour claims of any nature whatsoever, including claims based on breach of an express or implied contract, that accrued during my employment or while working at LM Manufacturing, LLC. between July 11, 2021 through July 8, 2025, including, but not limited to, all federal, state, and local claims for wages, including all overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

(*Id.* at § H(3)).

### E. Notice of Settlement of Lawsuit

The Parties will retain a third-party entity (the "Settlement Administrator") to perform the duties necessary to send "Settlement Notices" and Individual Settlement payments to each Eligible Employee. (Exh. B at § D). "Settlement Notice" means

the written notification that each Eligible Employee will receive, which explains the settlement and their right to participate, a copy of which is attached as Exhibit A to the Agreement. (*Id.* at Exh. A).  The Settlement Notice and Individual Settlement Payment shall be mailed by the Settlement Administrator to each Eligible Employee within thirty (30) days after payment by Defendant of the Gross Settlement Amount,. (*Id.* at § G(1)).

## LAW AND ARGUMENT

### I.      The Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute.

It is generally accepted in that "[j]udicial approval of settlement agreements in FLSA cases is necessary for an agreement to be enforceable." *Zambrano v. Motorcity Burger Co.*, 2017 WL 1477111, at *2 (E.D. Mich. Apr. 25, 2017); *see also, Cruz v. Don Pancho Mkt., LLC*, 2016 W.L. 4531142, at *2 (W.D. Mich. Aug. 23, 2016) (internal citation omitted).  As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *3 (E.D. Ky. Oct. 23, 2008).

The Sixth Circuit uses seven factors to evaluate class action settlements, and the Crawford court applied those factors in assessing the fairness of an FLSA settlement:

6

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583, 594-95 (E.D. Mich. 2006). As shown below and in the Stoops Declaration (Exh. C), the standard supports the Settlement's approval.

### A. No Indicia of Fraud or Collusion Exists

The Parties' respective counsel has extensive experience litigating claims under the FLSA. (*See generally*, Exh. C). The Agreement was achieved after arms-length and good faith negotiations between the Parties. As such, there is no indicia of fraud or collusion.

### B. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies forcefully here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.

Defendant claims that even if Plaintiff could succeed on the merits (which they contend Plaintiff cannot), Plaintiff cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. In addition, the Parties disagree as to: (i) whether collective certification would be granted; (ii) whether liquidated damages would be awarded; and (iii) whether Plaintiff could establish an underlying violation of the FLSA.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Parties would need to engage in extensive briefing and/or oral argument regarding collective certification, decertification, and summary judgment. Discovery would be expensive and time consuming given the continued factual and legal disputes between the Parties. The Settlement Agreement, on the other hand, provides prompt, efficient, and substantial relief to Plaintiff and all Eligible Employees, and amplifies the benefits of that relief through the economies of collective resolution.

### C. Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Relevant information was exchanged including exhaustive data regarding the Eligible Employee's time and payroll records.  (Exh C., Thompson Decl. at ¶¶ 17-28). Plaintiff's Counsel obtained and reviewed, detailed records for the Eligible Employees, and the legal issues in the case were thoroughly

researched by counsel for the Parties. (*Id.*). All aspects of the dispute are well-understood, and were competently negotiated, by both sides. (*Id.*).

### D. The Risks of Litigation Favor Approval

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiff's likelihood of success at trial. Plaintiff's claims are based on disputed issues of fact and law and Plaintiff's success at trial is far from guaranteed. In sum, although Plaintiff asserts that the claims are meritorious, the action certainly is not without risk. This factor thus weighs in favor of approval.

Counsel for both Parties believe in the merits of their respective clients' positions, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises multiple affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all and at each stage, including certification, decertification, summary judgment, and trial.

Even if Plaintiff succeeds on the merits of his claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. Additionally, a jury could find that Defendant acted in good faith, and thus not award

any liquidated damages. Any of these scenarios could result in a monetary award of less than the amount obtained through this settlement.

### E. Counsel and Named Plaintiff Favor the Agreement

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Plaintiff's Counsel believes the settlement is fair, reasonable, and adequate. Plaintiff's Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their client in negotiating the settlement. (*See* Exh. C). The Named Plaintiff has been fully informed and involved in the settlement process and agrees to the Agreement. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### F. Absent Class Members' Reaction

The absence of class member objections is indicative of class support of a settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). In the present case, unlike a Rule 23 Class Action settlement, there are no "absent" class members, and each Eligible Employee has the

option of opting into this matter. The Eligible Employees are not bound by the Settlement unless they negotiate the Individual Settlement Payment they are issued. As such, any members who choose not to participate are free to do so without taking any action or making any objection.

### G. Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The Settlement ends complex litigation that has been pending for over one year and provides substantial relief to the Eligible Employees and avoids protracted, costly litigation. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 905-06 (S.D. Ohio 2001). The Settlement Agreement's terms are equitable and provide a reasonable resolution to the action. Continued litigation would increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of the potential putative plaintiffs. In fact, rulings by this Court or a jury verdict could result in a lower recovery for the Eligible Employees if this Court or a jury were to rule in Defendant's favor on disputed fact and law issues.

### II.     The Settlement Distributions are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, 2008 WL 4724499, at *9 (E.D. Ky.

11

Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the settlement is fair, reasonable, and adequate for Plaintiff and the Eligible Employees.

### A. Plaintiff's Counsel's Request for Fees and Litigation Expenses is Reasonable and Appropriate in this Case.

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

When assessing the reasonableness of a fee award, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

### 1.    The Court Should Adopt the Percentage Approach.

In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528

F.Supp.2d at 761. This flexible approach allows the Court to account for the unique and varied circumstances present in each class action.

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, *4 (S.D. Ohio Sept. 20, 2019) (*quoting Swigart v. Fifth Third Bank*, 2014 WL 3447947, *5-6 (S.D. Ohio July 11, 2014)). "Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, *16 (S.D. Ohio Feb. 16, 2021). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* As such, absent compelling reasons to the contrary, the percentage method is "preferred." *Arp v. Hohla & Wyss Ents., LLP*, 2020 U.S. Dist. LEXIS 207512, at *3 (S.D. Ohio Nov. 5, 2020); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. March 25, 1993) ("[F]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Hebert v.*

*Chesapeake Operating, Inc.*, 2019 WL 4574509, *8 (N.D. Ohio Sept. 20, 2019) (stating "33% is typical for attorney's fees in common fund, FLSA collective actions in this District..."). Here, the Court should use the preferred method in this district and award a percentage-of-the-fund.

## 2.   The *Ramey* Factors

To ensure a fee is reasonable, courts also analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). The *Ramey* factors include: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 WL 3957364, *1 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the

14

case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fees and costs.[2]

First, Plaintiffs' counsel's work resulted in a significant benefit to the Eligible Employees whereby each person will receive Individual Settlement Payment that is based on their hours worked and shift differentials paid. To receive this money, the Eligible Employees only need to negotiate their settlement checks, which will be provided to them by a third-party settlement administrator, along with the Settlement Notice. Thus, this factor supports the proposed fee award.

Second, it is widely acknowledged that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources. The attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, 2017 WL 2838148, *8 (S.D. Ohio June 30, 2017) (citation omitted). The societal benefit is particularly acute in wage-and-hour cases brought on behalf of workers.  In order for attorneys to take on these cases, which, in the class and collective action setting, are complex and difficult cases, attorneys must be fully compensated for their work. Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.*

---

[2] Defendant takes no position on Plaintiff's request for the attorneys' fees and litigation expenses provided in the Settlement Agreement.

Third, Class Counsel litigated this matter on a wholly contingent basis with no guarantee of recovery. This supports the proposed fee award.

Fourth, a lodestar cross-check, while not required, also supports Plaintiff's Counsel's fee request. *Mitchell v. Indep. Home Care, Inc.*, 2019 WL 696941, *7 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019). Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. Plaintiff's Counsel has submitted a detailed Declaration in support of the requested attorneys' fees and litigation expenses. (Exh. C).

The Court should also be aware that Plaintiff's Counsel's work does not end at settlement approval. Class Counsel frequently spends additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters, and such additional work is expected in this case.

To date, Plaintiff's Counsel has incurred 58.9 hours and $20,162.50 in attorneys' fees. This means at the conclusion of this case (including extensive work related to settlement administration and Eligible Employee payment processing), Plaintiff's Counsel will have accumulated a lodestar that, based on the requested fee amount, will result in a negative. (Exh. C, Thompson Decl. at ¶ 40). This is well below the acceptable range. *See Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that

found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512 at *19 (S.D. Ohio Nov. 5, 2020) (approving lodestar multiplier of 5.29). Indeed, given the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis. This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate. The Court should note that the employer-defendant was represented by highly competent and skilled counsel. Employee-plaintiffs require equally proficient representation.

Fifth, as noted above, this was a complex wage and hour collective action. The Court should find that this factor weighs in favor of approving the fee.

Sixth, and finally, Plaintiff and Defendant are represented by experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. Counsels' professional skill and standing support approving the fee.

For these reasons, the Court should determine that the requested fees and litigation expenses are reasonable, and approve the request for attorneys' fees in the amount of $36,500 and litigation expenses in an amount not to exceed $500.00.

## B. The Service Award to the Named Plaintiff is Fair and Reasonable

The Parties request for approval of a service award to Plaintiff Geraldine Rupert of $2,500. "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013); *see also Griffin v. Flagstar Bancorp. Inc.*, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit").

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class members")); *Velez v. Majik Cleaning Serv.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

18

In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g., Bert v. AK Steel Corp.*, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008). Here, Plaintiff Haughton satisfies all three factors.

First, Plaintiff Tannyhill has been involved in this action since the pre-suit investigation that gave rise to this action. (Exh. C, Thompson Decl. at ¶ 42). He participated in the pre-suit investigation, provided documents and information crucial to the evaluation of and pursuit of the claims, assisted in preparation for mediation, and participated in settlement negotiations. (*Id*.) These actions resulted in substantial benefit to Eligible Employees, leading to a favorable settlement.

Second, Plaintiff Tannyhill undertook substantial direct and indirect risk. Plaintiff Tannyhill agreed to bring the action in his name and agreed to testify at deposition and trial. (*Id*.) In doing so, he assumed the risk of retaliation and blacklisting. *Id*.; *see Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending her name to the litigation, she has, for the benefit of the class as a

whole, undertaken the risk of adverse actions by the employer or co-workers"); *see also Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *9 (D. Conn. July 31, 2014) (lead plaintiff "assumed risk of retaliation"); *Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"). *See also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees.").

Third, Plaintiff Tannyhill spent significant time and effort pursuing this litigation on behalf of the Eligible Employees. This includes the time and effort he expended in pre-litigation assistance to Plaintiff's counsel in investigating the claims brought.

Additionally, the amount of the requested service award is reasonable and consistent with awards that have been granted in employment class and collective actions. In FLSA cases in this District and elsewhere. *See Pieber v. SVS Vision, INC.*, 2022 WL 687248, at *1 (E.D. Mich. Mar. 8, 2022) (approving service awards of $6,000 and $3,000 to representative plaintiffs where total settlement amount was $200,000); *Mullins v. S. Ohio Pizza, Inc.*, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) ($10,000 service award for each named plaintiff); *Arledge v. Domino's*

*Pizza, Inc.*, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) ($10,000 service award for each named plaintiff); *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (awarding $8,000 service payment to class representative in wage and hour case).

### C. The Settlement Notice is Adequate

An FLSA notice must be "accurate and timely" and provide sufficient information so that putative class members "can make informed decisions as to whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The proposed Settlement Notice in this case is timely, accurate, and informative as it provides the following information:

- The definition of the settlement collective;

- The nature of the action;

- The claims alleged;

- Information as to how to participate or not participate in the action and settlement;

- Information regarding the service award to the Named Plaintiff and attorneys' fees and costs;

- How the payments were calculated;

- Binding effect of joining the action and settlement;

- The release language involved; and

- Contact information for counsel.

21

*See Wade v. Werner Trucking Co.*, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014 (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) (same).

## CONCLUSION

WHEREFORE, Plaintiff moves this Court for entry of the proposed Order Approving Settlement Agreement, attached hereto as Exhibit A, which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses this action with prejudice and without further costs or fees to any party.

Date: July 8, 2025                              Respectfully submitted,

                                                Jason J. Thompson (P47184)
                                                Kathryn E. Milz (IL ARDC 6297213)
                                                **SOMMERS SCHWARTZ, P.C.**
                                                One Town Square, 17th Floor
                                                Southfield, Michigan 48076
                                                (248) 355-0300
                                                jthompson@sommerspc.com
                                                kmilz@sommerspc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2025, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Jason J. Thompson*
Jason J. Thompson
